UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SUBTRACTUS, INC., d/b/a
AMPERSAND,

    Plaintiff,

  v.                                     Case No. 19-CV-555

BEST GRAPHICS, INC.,

    Defendant.

---

### DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

---

Subtractus, Inc., d/b/a Ampersand ("Ampersand") purchased a used Heidelberg ST-400 Saddle Stitcher—a machine design to bind and staple paper products—from Best Graphics, Inc. Ampersand alleges that the machine is non-functional and useless, with value only as scrap metal. Ampersand sues Best Graphics for false advertising under Wis. Stat. § 100.18 and breach of the implied duty of good faith and fair dealing. Best Graphics moves to dismiss Ampersand's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that it fails to state a claim upon which relief can be granted. For the reasons that follow, the defendant's motion to dismiss is granted in part and denied in part.

### BACKGROUND

In September 2018, Ampersand's president, Damian McDonald, inquired into purchasing a used Heidelberg ST-400 Saddle Stitcher (the "Machine") from Best Graphics by emailing Best Graphics' Service Manager, Gary Martin, and Best Graphics' Sales Representative, A.J. Brahm. (Am. Compl. ¶ 6, Docket # 13.) The Machine is designed to bind and staple paper products, such as books, pamphlets, and magazines. (*Id.* ¶ 7.)

McDonald viewed the Machine on Best Graphics' website, which listed the machine as low-usage, specifically stating "Approx. Book Count: 75,000,000 - Single Shift Operation." (*Id.* ¶ 8.) On September 28, 2018, Martin explained to McDonald that McDonald could not inspect the Machine because it was dismantled, but a video of it running a job pre-tear down was available on Best Graphics' website. (*Id.* ¶ 9.) After viewing the video, McDonald was concerned about the Machine's performance and emailed Brahm on October 9, 2018 stating as follows: "The machine is running quite slow for an ST400, are there any mechanically/electronically limiting issues that you're aware of that I need to plan for?" (*Id.* ¶ 10.) That same day, Brahm responded to McDonald stating: "No issues governing the machine's speed; frankly, they are a union shop - which might have something to do with it - and also the fact that they frequently run very small size formats (which we know from their Osako demo days, purchase order), so perhaps they ran slower to ensure all pockets were 'firing' without misfeeds." (*Id.* ¶ 11.)

On October 12, 2018, McDonald emailed Brahm expressing several concerns:

> I'm thinking that it might not be worth coming down to see the machine, as it is on skids there isn't a lot I can inspect other than cosmetic and consumables like belts etc...
>
> I want to make this deal work and move forward. I have a few more questions/concerns:
>
> 1) I've learned that this machine requires a tremendous amount of compressed air. I will have to invest $20k in a new twin screw compressor to accommodate the load. What is the absolute best price you can do for the machine shipped and installed?
> 2) Will you guarantee that when your installer leaves the machine is up and running?
> 3) Is there anything that you know not to be working in terms of the automated setup of the machine?
> 4) Can you have one of your guys check the face trim stops and let me know if there is any play in them?

(*Id.* ¶ 12.) Brahm called McDonald and said that he would "circle back" with his team and Raff Printing, Inc. (the Machine's previous owner) to make sure there was a clear understanding on the Machine's functionality by speaking with the operator to determine which components were operational and which components were not working. (*Id.* ¶¶ 13,

23.) Brahm's statement reassured McDonald regarding his concerns outlined in the October 12 email. (*Id.* ¶ 13.)

On October 15, 2018, Brahm emailed McDonald forwarding a formal ST-400 machine quotation and making several observations regarding the Machine, as outlined below:

A few observations:

1. I have identified that the Stitcher came with SB-50 Hohner heads; I see (2) on the machine, and will clarify with Gary Martin that there is a skid with miscellaneous spares, and Stitch Heads; there should be (4) total, as it's a machine that can do 2-up work
2. There are (2) Flat-fed Feeders, and (6) Upright Feeders – for a total of (8) Signature Feeders – per my time onsite with Raff Printing last week
3. The 2nd Cover Feeder needs a new motor per Raff Printing last week
4. The Signature Feeder in the 8th position needs a new relay per Raff Printing this morning
5. I've identified the automation capabilities ST-400 machines have per conversations with Raff's Operator; in its current state, the automation is "whole" barring the observations above that the 2nd Cover Feeder needs some T.L.C. before it would integrate back into the CPUs automation software
6. You'll see that the machine's payment terms – like we discussed – are broken up into (3) streams: a deposit down, money at shipment, and a balance outstanding until the machine is installed, and you're running jobs; this is standard policy for the 150 – 175 machine sales we do each year
7. If you'd like the machine cleaned down top-to-bottom – which I think you will – we'll need about (2) business weeks to finish wiping down; I've annotated this note in the "Machine Will be Ready for Shipment..." section
8. There is no HST, GST tax when purchasing from U.S.-based companies; however, you are responsible for claiming this machine under the rules of Canadian Tax Law (which, traditionally, other Printers have stated the tax is recuperated for all Bindery, and Graphic Arts machinery purchases)

Print out, review, and tap me an email, or give me a shout in the A.M.

For now, here's a side-by-side of a Feeder that's been cleaned versus a Feeder that's "As Is,"

(*Id.* ¶ 14.) Ampersand alleges that it relied on Best Graphics' representations about the condition of the machine and on October 17, 2018, the parties entered into a Purchase Agreement under which Best Graphics sold the Machine to Ampersand for a total unit and shipping cost of $60,500.00. (*Id.* ¶¶ 15–16.)

The Machine arrived at Ampersand's facility on November 15, 2018. (*Id.* ¶ 17.) Immediately upon inspection, McDonald notified Best Graphics that the Machine's main stitching unit was damaged. (*Id.* ¶ 18.) Brahm assured McDonald that the damage was cosmetic and told McDonald to continue the Machine's installation. (*Id.* ¶ 19.) When the

Machine was fully installed and powered, McDonald noticed several undisclosed problems with the Machine's functionality. (*Id.* ¶ 20.) McDonald further discovered the main stitching assembly bearings were broken and required replacement. (*Id.* ¶ 21.) McDonald contacted the Machine's manufacturer for a repair quote and learned from the manufacturer that it had previously attempted to repair the exact Machine when it was at Raff Printing, but discovered the Machine was not salvageable because it required over $343,076.00 in total repairs. (*Id.* ¶¶ 22–23.) The manufacturer declined to repair the Machine because its condition was so flawed that it could not get the Machine to minimum operational standards. (*Id.* ¶ 26.) Ampersand alleges that in its current condition, the Machine does not operate as designed and is useless to Ampersand—its only value is scrap metal. (*Id.* ¶¶ 27–28.) Ampersand alleges that it has expended a total of $93,118.54 related to the Machine. (*Id.* ¶ 29.)

## APPLICABLE RULE

Best Graphics moves to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). Rule 12(b)(6) does not permit the court to consider matters outside the complaint without converting the motion into a motion for summary judgment, Fed. R. Civ. P. 12(d). However, the court may consider matters outside the pleadings without converting the motion into a motion for summary judgment if the matters were referred to in the complaint and are central to the plaintiff's claim. *Verfuerth v. Orion Energy Sys., Inc.*, 65 F. Supp. 3d 640, 649 (E.D. Wis. 2014). The Seventh Circuit posited that this exception should "perhaps . . . be limited to cases in which the suit is on a contract or the plaintiff, if he has not attached, has at least quoted from, the document later submitted by the defendant." *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002). In this case, although Ampersand did not attach the contract to its amended complaint, it references the contract in the complaint (Am. Compl. ¶ 16) and the contract is central to Ampersand's claims. Thus, I need not convert Best Graphic's Rule 12(b)(6) motion into a motion for summary judgment.

## ANALYSIS

Ampersand alleges that Best Graphics made false, deceptive, and/or misleading representations to induce Ampersand to enter into a contractual agreement to purchase a defective machine. Ampersand sues Best Graphics for false advertising under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18. Ampersand also sues Best Graphics for breach of the implied duty of good faith and fair dealing. Best Graphics moves to dismiss both causes of action. I will address each in turn.

1. *Wis. Stat. § 100.18: False Advertising*

Ampersand alleges that Best Graphics violated Wis. Stat. § 100.18 when it allegedly made false, deceptive, and/or misleading representations to induce Ampersand to enter into the October 17, 2018 purchase agreement to buy the Machine. To state a claim under Wis. Stat. § 100.18, a plaintiff must allege that: (1) the defendant made a representation to "the public" with the intent to induce an obligation, (2) the representation was "untrue, deceptive or misleading," and (3) the representation materially caused a pecuniary loss to the plaintiff. *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 662 (W.D. Wis. 2009) (citing *Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 749 N.W.2d 544).

Best Graphics argues that Ampersand fails to state a claim for two reasons. First, Best Graphics argues that Ampersand's complaint fails to allege that Best Graphics made any misrepresentations to Ampersand. (Def.'s Br. at 10, Docket # 15.) Best Graphics asserts that any untrue statements were made by the Machine's former owner, Raff Printing, to Best Graphics, and all Best Graphics allegedly did was pass along information to Ampersand that turned out to be inaccurate. (*Id.*) This argument is easily disposed of. While Best Graphics may argue on summary judgment that Ampersand has no evidence to support that Best Graphics made an untrue representation, at this stage, Ampersand's amended complaint sufficiently alleges that Best Graphics made untrue, deceptive, and/or misleading representations regarding the true condition of the Machine. (Am. Compl. ¶¶ 30–36.)

The crux of Best Graphics' motion, however, is its second argument. Best Graphics argues that the parties' contract includes an integration clause that precludes the § 100.18 claim. Specifically, paragraph 12 of the Terms and Conditions of Sale states as follows:

> 12. **Construction, Venue, Severability.** This contract shall be governed and construed in all respects by the laws of the State of Wisconsin. The parties hereto agree that any action on or related to the Machinery or this contract shall be venued in state or federal courts located in the State of Wisconsin and Purchaser hereby consents to the jurisdiction of the courts of the State of Wisconsin. This contract contains the entire agreement between the Seller and Purchaser, and all representations and agreements, whether oral or written, are void unless contained herein. In the event that any provision of this contract is declared void or unenforceable by any competent legislative or judicial authority, said declaration shall not affect the enforceability of any other provision of this contract, it being the intent of the parties that this contract shall be severable and applied as if such void or unenforceable provision had not been included herein.

(Declaration of Dan Brahm ¶ 2, Ex. A at ¶ 12, Docket # 16-1.) Best Graphics focuses on the third sentence of paragraph 12, which states: "This contract contains the entire agreement between the Seller and Purchaser, and all representations and agreements, whether oral or written, are void unless contained herein." (*Id.*) Best Graphics argues that Ampersand bought the Machine "as is" (indeed, the box for "as is" is checked for the warranty) (Docket # 16-1 at 1) with the understanding that any discussions prior to entering into the contract were "void" if not included in the contract (Def.'s Br. at 11).

Best Graphics relies primarily on *Peterson v. Cornerstone Prop. Dev., LLC*, 2006 WI App 132, 294 Wis. 2d 800, 720 N.W.2d 716 in support of its position. *Peterson* involved a contract for the purchase of a condominium, which the plaintiff claimed was not in the condition represented by the seller. *Id.* ¶¶ 4–10. The plaintiff sued the defendant under § 100.18, alleging that the defendant had engaged in false advertising by making representations and omissions that were "untrue, deceptive or misleading." *Id.* ¶ 10. The defendant argued that the § 100.18 claim was barred by the integration clause in the parties' contract. *Id.* ¶ 11.

> The contract in *Peterson* contained three integration provisions stating as follows:
>
> "This Offer, including any amendments to it, contains the entire agreement of the Buyer and Seller regarding the transaction. *All prior negotiations and discussion have been merged into this Offer*"; "Seller has made no representations

7

> other than written in this offer and attached documents concerning the property"; and finally:
> 
> "The Buyer acknowledges, subject to the Limited Warranty contained in Exhibit E . . . (c) other than those written representations concerning the condition of the Property contained in the Condominium Offer to purchase, including the Exhibits annexed thereto, *she has not relied on any representations made by the Seller in entering into the Condominium Offer to Purchase . . . .*"

2006 WI App 132, ¶ 37 (emphasis added by *Peterson* court). The *Peterson* court found that the integration clause in the parties' contract barred the plaintiff's § 100.18 claim because the integration clause specifically disclaimed the purchaser's right to rely on any alleged fraudulent misrepresentations. *Id.* The court found that "the three provisions of Peterson's contract that expressly stated that the written contract made up the entire contract, to the exclusion of all other provisions, provide exactly the kind of specific disclaimer that makes it apparent that an express bargain had been struck." *Id.*

Several courts subsequent to *Peterson* considered whether an integration clause barred a § 100.18 claim. In *Am. Orthodontics Corp. v. Epicor Software Corp.*, 746 F. Supp. 2d 996, 998 (E.D. Wis. 2010), the defendant similarly brought a Rule 12(b)(6) motion to dismiss the plaintiff's § 100.18 claim on the ground that the contract contained an integration clause barring liability for misrepresentations made before the contract was executed. The integration clauses in that case stated, in pertinent part: "This Agreement, and the Order that accompanies it, is complete and constitutes the entire agreement between us with respect to the Software." (Docket # 16 at 5 in Case No. 10-CV-189 (E.D. Wis.).) However, the agreement also contained a provision specifically preserving the defendant's liability for fraud. 746 F. Supp. 2d at 998. The court distinguished this clause from the clause in *Peterson*, stating that this clause did not specifically disclaim the plaintiff's right to rely on the defendant's fraudulent misrepresentations. *Id.* This, coupled with the contract's preservation

of a "fraud" claim, created ambiguity as to whether it disclaims a § 100.18 claim, thus precluding dismissal under Rule 12(b)(6). *Id.*

In *C & M Hardware, LLC v. True Value Co.*, 2013 WI App 84, 3, 348 Wis. 2d 761, 833 N.W.2d 872 (unpublished), although not addressing a § 100.18 claim, the court of appeals considered whether an integration clause barred two misrepresentation claims. The contract's integration clause stated that:

> This Agreement, and any other agreement which [C & M] signs with [True Value], is the entire and complete Agreement between [C & M] and [True Value] and there are no prior agreements, representations, promises, or commitments, oral or written, which are not specifically contained in this Agreement or any other agreement which [C & M] signs with [True Value]. The current form of the Company Member Agreement shall govern all past and present relations, actions or claims arising between [True Value] and [C & M].

*Id.* ¶ 9. The *C&M* court found the integration clause did not bar the misrepresentation claims, distinguishing this integration clause from the clause in *Peterson*:

> In *Peterson*, we gave particular emphasis to the fact that in one of the integration clauses, the buyer specifically agreed that "she has not relied on any representations made by the Seller," and the fact that the plaintiff failed to specify which particular representations made by the seller were relied upon by the buyer. *Id.*, ¶¶ 37, 39 (emphasis omitted). In the present case, however, the integration clause signed by C & M did not disclaim reliance upon True Value's representations. Unlike the plaintiff in *Peterson*, C & M did not disclaim liability for misrepresentation and was quite specific as to which representation formed the basis of its claims and thus the case is distinguished.

*Id.* ¶ 20. Finally, in *Le Bleu Corp. v. Fed. Mfg. LLC*, No. 17-CV-549, 2018 WL 4936032, at *1 (E.D. Wis. Oct. 10, 2018), the plaintiff sued the defendant relating to the sale of an allegedly defective machine under § 100.18. As in this case, the defendant argued that the Terms and Conditions contained an integration clause barring plaintiff's § 100.18 claim. *Id.* at *10. The integration clause stated: "This Agreement constitutes the entire agreement between the

9

parties . . . . There are no understandings, representations, or warranties of any kind not expressly set forth herein." *Id.* at 11. The court distinguished this clause from the clause in *Peterson*, stating that the "integration clause does not, as the integration clauses in *Peterson* did, specifically disclaim Le Bleu's right to rely on alleged fraudulent misrepresentations." *Id.*

Best Graphics argues that the integration clause in this case is more akin to the one in *Peterson*. It relies principally on the contract's use of the word "void." (Def.'s Reply Br. at 2–3, Docket # 25.) Again, the integration clause in this case states: "This contract contains the entire agreement between the Seller and Purchaser, and all representations and agreements, whether oral or written, are void unless contained herein." (Docket # 16-1 at ¶ 12.) Best Graphics argues that the word "void" is an "active disavowal" of any and all representations not contained within the agreement. (Def.'s Reply Br. at 3.) Best Graphics argues in contrast that in cases such as *Le Bleu*, *Am. Orthodontics Corp.*, and *C&M*, the integration clauses only made "passive acknowledgements" such as "This Agreement constitutes the entire agreement" and "there are no representations which are not stated in the contract." (*Id.*)

I disagree. What made *Peterson* unique was the fact that the parties' contract contained a provision in which the plaintiff specifically acknowledged that she did not rely on any representations made by the defendant in entering into the contract. In other words, she was specifically disavowing that the seller's representations had anything to do with her decision to purchase the condominium. Thus, if the seller made fraudulent representations, it really should not matter, because the plaintiff disclaimed the right to rely on the seller's representations in purchasing the condominium.

Ampersand's case, however, is much more akin to *Le Bleu*, *Am. Orthodontics Corp.*, and *C&M*. In those cases, as in this one, the integration clauses acknowledged that the contract contained the parties' entire agreement and that there were no other representations except those expressly set forth in the contract. I see no significant difference between an agreement stating that the contract contains the parties' entire agreement and there are no other representations and one that states, "This contract contains the entire agreement between the Seller and Purchaser, and all representations and agreements, whether oral or written, are void unless contained herein." Both state that there are no other representations except the ones contained in the agreement. The use of the word "void" does not change that. Unlike in *Peterson*, Ampersand never agreed that it was not relying on any representation by Best Graphics in entering into the contract. For this reason, Ampersand's § 100.18 claim does not fail as a matter of law and Best Graphic's motion to dismiss this claim is denied.

   2.   *Breach of the Implied Duty of Good Faith and Fair Dealing*

Ampersand also alleges that Best Graphics owed it a duty to act in good faith and deal fairly in selling it the Machine, and Best Graphics violated this duty by misrepresenting the Machine's condition. (Am. Compl. ¶¶ 37–41.) Best Graphics moves to dismiss this cause of action, arguing that the claim fails as a matter of law because the duty of good faith only arises upon the entry into a contract, not before. (Def.'s Br. at 14 citing *Metro. Ventures, LLC v. GEA Assocs.*, 2006 WI 71, ¶ 36, 291 Wis. 2d 393, 415, 717 N.W.2d 58, 69, *opinion clarified on denial of reconsideration*, 2007 WI 23, 299 Wis. 2d 174, 727 N.W.2d 502 ("The duty of good faith arises because parties to a contract, once executed, have entered into a cooperative relationship and have abandoned the wariness that accompanied their contract

negotiations, adopting some measure of trust of the other party.").) Ampersand agrees with Best Graphics that the actions underlying this cause of action must take place *after* the contract is entered into, and the explicit allegations in the Amended Complaint reference pre-contractual activity. (Pl.'s Br. at 11, Docket # 20.) Ampersand argues, however, that it should be allowed leave to amend or replead the cause of action either immediately or after discovery is conducted. (*Id.* at 12.)

Wisconsin recognizes the implied duty of good faith and fair dealing present in every contract and the ability to seek damages for the breach of this duty. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir. 2000); *see also E. Capitol Realty LLC v. TSA Stores Inc.*, No. 15-CV-1129, 2016 WL 8578008, at *5 (E.D. Wis. Jan. 12, 2016) ("Wisconsin recognizes an obligation of good faith attendant to every contract, breach of which may give rise to damages."). The requirement of good faith, however, is not a duty independent of the contract, but a duty of the contract itself. *Home Valu*, 213 F.3d at 966. Thus, "the implied covenant 'does not support an independent cause of action for failure to act in good faith under a contract.'" *Id.* (quoting *Hauer v. Union State Bank of Wautoma*, 192 Wis. 2d 576, 597, 532 N.W.2d 456, 464 (Wis. Ct. App. 1995)). Rather, "in contract law the obligation of good faith and fair dealing is a tool used by courts to force parties to comply in substance, rather than in form, with their contractual obligations." *Whetter v. Brown Cty.*, 2007 WI App 19, ¶ 18, 298 Wis. 2d 550, 727 N.W.2d 375 (unpublished). Given the fact that the contractual duty of good faith and fair dealing is dependent on the contract, as Ampersand acknowledges, the duty cannot exist until the contract is formed.

Ampersand argues, however, that it intends to allege that Best Graphics breached the implied duty by not ensuring that the product was operational and when it became aware

the product was not operational, failing to remedy the situation. (Pl.'s Br. at 11–12.) Ampersand asks for leave to amend the complaint either now or after additional discovery is completed. (*Id.* at 12.) It is unclear why Ampersand would need to wait until additional discovery is completed, as it appears to have sufficient facts now to properly allege this claim. Therefore, I will grant Best Graphic's motion to dismiss Count Two of the complaint, but will give Ampersand leave to file an amended complaint addressing the defects articulated in this decision. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (plaintiff should be given at least one opportunity to amend before dismissing cause of action). Any amended complaint must be filed within fourteen (14) days of the date of this decision and order.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion to dismiss (Docket # 14) is **GRANTED IN PART AND DENIED IN PART**. The defendant's motion to dismiss Count One of the Amended Complaint (Wis. Stat. § 100.18 claim) is **DENIED**. The defendant's motion to dismiss Count Two of the Amended Complaint (Breach of the Implied Duty of Good Faith and Fair Dealing) is **GRANTED**. Count Two is **DISMISSED WITHOUT PREJUDICE**. Any amended complaint must be filed within **fourteen (14) days** of the date of this decision and order.

Dated at Milwaukee, Wisconsin this 9th day of October, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge